PENNSYLVANIA STEEL CO. et al. v. NEW YORK CITY RY. CO. et al.
(four cases).

In re NEW YORK RYS. CO.

(District Court, S. D. New York. February 3, 1912.)

STREET RAILROADS (§ 54*)—SALE UNDER FORECLOSURE—LIABILITY FOR TORT CLAIMS AGAINST RECEIVERS.

An application by the purchaser of street railroad property at foreclosure sale for an order requiring the receivers to set aside a sum from the cash fund in their hands arising from their operation of the property to be applied in payment of tort claims against them growing out of negligence in such operation denied in view of the provisions of the decree under which the sale was made.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 133; Dec. Dig. § 54.*]

In Equity. Suit by the Pennsylvania Steel Company and another against the New York City Railway Company and the Metropolitan Street Railway Company and three other suits. In the matter of application of the New York Railways Company for an order on Receivers of the Metropolitan Company. Motion denied.

See, also, 177 Fed. 925, 101 C. C. A. 205.

This is an application by the New York Railways Company, the new company to which the purchasing committee has turned over the property sold under foreclosure of the two mortgages of the Metropolitan Street Railway Company. Petitioner asks that receivers of the last-named company set aside from the cash funds in their hands a sum equal to $500,000, which may be immediately available for settling and discharging tort claims and suits against the receivers concerning their operation of said company. Such operation ceased on December 31, 1911.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Richard Reid Rogers, for petitioner.
Arthur H. Masten, for Metropolitan Receivers.
Matthew C. Fleming, for N. Y. City Ry. Co. Receivers.
George N. Hamlin, for Contract Creditors Committee.
Benjamin S. Catchings, for Tort Creditors Committee.
Brainard Tolles, for First Mortgage Bondholders.

LACOMBE, Circuit Judge. The petition avers that receivers have from time to time during their receivership segregated and set aside the sum of $1,382,653.58 especially to meet their tort claims. The fact is that no such sum has been actually set aside. The amount is a mere bookkeeping entry of what it has been estimated such claims will ultimately aggregate. The receivers, however, had in their possession on December 31st, when they turned over the railway property, about $1,800,000 proceeds remaining from their operation of the same. The obligations incurred by receivers for damages and personal injuries inflicted on other persons as a consequence of their operation of the road are undoubtedly an operating expense, and there is a strong equity in petitioner's request that such damages be paid by them if possible out of the money earned by them from such operation. But a serious objection to making the order asked for is found in the language of the decree in foreclosure under which this property was sold to petitioner's assignor. That decree provided as a condition of sale that the purchaser should pay at least $10,000,000 in cash for the property covered by the first mortgage and $2,000,000 in cash for property covered only by the second mortgage—a total cash bid of $12,000,000. It provided as a further condition of sale that:

The "purchaser shall, as a part of the consideration for such sale *and in addition to the price bid,* * * * *assume liability for all claims in tort,* whether in suit or presented or not, arising during the period of operation of said railway system by receivers appointed by this court, *which shall not have been paid* and discharged *by said receivers at the time of the sale.*"

The petitioner contends that, because it is equitable that receivers should discharge their own liabilities out of their own receipts, if the receipts are sufficient, this clause must be construed merely as a guaranty that the purchaser will assume and pay them, should it eventually be found that receivers are unable to do so. Other parties contend that the language of the decree expresses no such idea, merely of further assurance, and that such decree means precisely what it says, viz., that touching all tort claims which receivers had not discharged at the time of the sale the purchaser assumed the burden of paying them as a part of the consideration which he agreed to pay in addition to the $12,000,000. In other words, if it should eventually turn out that the total claims of this sort aggregate $1,300,000, the purchaser is to pay at least $13,300,000 for the property—$12,000,000 in cash and the balance from time to time in the future as the same comes due and is liquidated.

Of course, it was within the power of the court to fix such conditions of sale as it thought best, and there is nothing inexplicable or surprising in requiring the purchaser to pay these particular obliga-

tions incurred during the operation of the road under direction of the court. It is manifest that they cannot be liquidated for years to come, certainly not for more than three years (the period fixed in the statute of limitations). It may have seemed to the court an unwise thing to continue the receivers in office for some indefinite period without any opportunity to pass their accounts and obtain their discharge, when as to all their other transactions and obligations their accounting might be closed within a year.

Moreover, it must be borne in mind that this decree has been approved by the Circuit Court of Appeals; and approved by that court after its attention was called to this very provision. In the brief filed by the Guaranty Trust Company on that appeal, at page 122 et seq., it was contended that the decree was erroneous because it undertook to charge the proceeds of sale of the mortgaged property with the payment of the liabilities incurred by torts or negligence in the operation of the railways by receivers. Such liabilities it was argued should be paid out of the assets of the receivership in which they were incurred. Nevertheless the Court of Appeals rewrote several of the clauses of the decree incorporating in what it thus rewrote the very language now under consideration. 177 Fed. 925, 101 C. C. A. 205. Under these circumstances a lower court acting under a mandate should be extremely cautious not to give instructions which may seem to be not entirely consistent with the text of the mandate.

Counsel for the trustee under the first mortgage has asked that the question raised as to what construction should be given to the language above quoted be not decided at this stage of the proceedings. He represents, of course, nonassenting as well as assenting bondholders. Concededly the interest of nonassenting bondholders will be pecuniarily affected by a construction which holds that the amount of the bid is less by more than $1,000,000 than the language of the decree seems to indicate that it should be. Counsel suggests that probably in the course of time all nonassenting will become assenting bondholders, and therefore will be no longer interested in having the bid so construed.

It may be well, therefore, to look into some other matters which have been presented, and which suggest practical difficulties in the way of granting the relief asked for. The total amount of the particular fund out of which it is asked that receivers pay these claims is about $1,800,000. There are, however, other claims which have been filed against receivers, because of their actions as such receivers, and which certainly are as much "operating expenses" as are the damages resulting from negligence in such operation. The receiver of the New York City Railroad Company claims that cash and property which belonged to his company was taken possession of and used up by the Metropolitan receivers. This claim aggregates $1,500,000 or more. Two companies, the Second Avenue Railroad and the Central Park Northern & Eastern Railroad have claims for use and occupation of their property by receivers and for personal property of their own which it is alleged receivers converted without right and used in operation of system. These aggregate several hundred thousand dollars. A similar claim of the Third Avenue Railroad has been adjusted

at $200,000, which sum will shortly be paid from the surplus in the receivers' hands. If all these be liquidated at anything near the amount claimed, and are grouped as they should be with the tort claims as "operating expenses" of receivers and payment be undertaken out of the apparent surplus as it stood on December 31, 1911, it is manifest that the fund would be inadequate to pay them all in full. At what amounts these other claims will finally be liquidated, no one can tell until the Court of Appeals shall pass upon the contentions raised in the several proceedings.

It is suggested that there are funds coming from other sources from the $12,000,000 cash bid, possibly from claims made on behalf of the Metropolitan against cash now in the hands of the New York receiver, which eventually will prove sufficient to pay all obligations of every sort. But that condition would not eliminate the question which we find at the threshold of the present application, viz.:

"What did the Court of Appeals mean by its direction that the purchaser at foreclosure sale should assume liability for all claims in tort as *a part of the consideration in addition to the price bid?*"

Some time that question will have to be decided. The sooner it can be presented to the Court of Appeals upon review of a decision of it by this court, the sooner it will be definitely settled. Nevertheless, in view of the suggestion on behalf of the trustee for bondholders, I shall not now pass upon it, unless at the settlement of the order there may be evidenced some general consensus of opinion that such decision be made.

Upon the whole situation as it is now presented, I conclude that receivers should not be now instructed to pay these tort claims, as they are liquidated, out of the cash surplus remaining in their hands on December 31, 1911.